## Stampolis, Appellant, *v.* Lewis.

Argued April 16, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*Charles E. McKissock,* for appellant.

*Alexander Unkovic,* with him *A. E. Kountz,* and *Kountz, Fry & Meyer,* for appellees.

OPINION BY ERVIN, J., June 11, 1958:

This action in assumpsit was initiated by plaintiff, a miner, with the issuance of a writ of foreign attachment directed against funds held by the garnishee, a mine operator, and owing to the defendant, the Welfare and Retirement Fund, created under an agreement entered into in 1950 between the mine operators and the United Mine Workers of America, a labor union. The plaintiff seeks a pension from the Fund. The Fund appeared de bene esse and filed preliminary objections alleging lack of jurisdiction. The court below quashed the writ and the plaintiff took this appeal.

The facts, as stipulated by the parties, reveal that the 1950 agreement provided that the operators pay to the trustees of the Fund thirty cents a ton (now, by amendment, forty cents a ton,) on each ton of coal

mined on the properties of the operators throughout the country. The agreement was executed in Washington, D. C. and provided that the trust should have its place of business in Washington, D. C., which it has done. All of its property is personal, in the form of stocks, bonds and cash, and has been kept in Washington, D. C. Generally, the purposes of the Fund are (1) to make payments from the Fund "for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or life insurance, disability and sickness insurance or accident insurance; (2) benefits with respect to wage loss not otherwise compensated for at all or adequately by tax supported agencies created by federal or State law; (3) benefits on account of sickness, temporary disability, permanent disability, death or retirement; (4) benefits for any and all other purposes which may be specified . . .; and (5) benefits for all other related welfare purposes as may be determined by the Trustees. . . ." The three trustees, none of whom reside in Pennsylvania, were appointed pursuant to the 1950 agreement and §302(c) of the Labor-Management Relations Act, 1947, 29 U.S.C.A. §186, one by the operators, one by the union and the third was selected by the first two.

The action in the court below was based upon the Act of June 13, 1836, P. L. 568 et seq., 12 PS §2861 et seq., and subsequent amendments. The writ was issued pursuant to Pa. R. C. P. No. 1251 et seq., which provide that foreign attachment may be issued to attach the property of a defendant upon any cause of action at law or in equity in which the relief sought includes a judgment or decree for the payment of money when the defendant is an unincorporated association without a regular place of business in the

Commonwealth or is a foreign corporation or similar entity. Rule No. 2151 defines "association" as meaning an unincorporated association conducting any business or engaging in any activity of any nature whether for a profit or otherwise under a common name. Rule No. 2176 defines "similar entity" as any insurance association or exchange or any other association which is regarded as an entity distinct from the members composing the association. The word "association" is defined in Black's Law Dictionary, Third Edition, as: "The act of a number of persons in uniting together for some special purpose or business. The persons so joining. It is a word of vague meaning used to indicate a collection of persons who have joined together for a certain object." 7 C.J.S. §1 sets forth that the word "association" "is used to indicate a collection of persons who have united or joined together for some special purpose or business. . . . The term 'association' is often used as synonymous with 'company' or 'society.' "

The purpose of the action of foreign attachment is to compel the appearance of nonresident defendants. *Raymond v. Leishman,* 243 Pa. 64, 89 A. 791. The Supreme Court has recently ruled that two fundamental facts must co-exist to sustain the action of foreign attachment: (1) nonresidence and (2) real or personal property within the Commonwealth: *Fairchild Engine & Airplane Corp. v. Bellanca Corp.,* 391 Pa. 177, 137 A. 2d 248. These facts do co-exist in the instant case.

There is respectable authority for the principles of law that a trust of movables created by an instrument inter vivos is administered by the trustee according to the law of the state where the instrument creating the trust locates the administration of the trust, Restatement, Conflict of Laws, §297, and that the administration of a trust of movables is supervised by the courts of that state only in which the administration

of the trust is located, Restatement, Conflict of Laws, §299. See also: *Hobbs v. John L. Lewis et al.,* 197 Tenn. 44, 270 S.W. 2d 352; *Kitchen v. New York Trust Co.,* 292 Ky. 706, 168 S.W. 2d 5. The rationale of these authorities is that a trustee should be responsible to the courts of one state only in order to avoid conflicting instructions which would make the administration of the trust difficult. There is also good authority for the principle of law that if a court has jurisdiction of the trust res, it may render a judgment in rem or quasi in rem affecting a nonresident defendant constructively summoned with reference to the res in the court's control but it may not render a judgment in personam: *Heinz's Estate,* 313 Pa. 6, 9, 169 A. 365; *Jones v. Jones,* 344 Pa. 310, 317, 25 A. 2d 327; 90 C.J.S. §454(a); 15 A.L.R. 2d 618. We are impressed by the thought that thousands of miners throughout the land should also be entitled to some consideration. Surely their convenience should be considered as well as that of the trustees. The trustees in six years received over $800,-000,000 from this source, a considerable portion of which came from Pennsylvania, and they can better afford to come here and litigate than can the miners go to Washington, D. C. to do so. It should also be remembered that the miner is not a disgruntled charity patient and that this fund only came into being as a direct result of the labor of the miners. This is not pure charity upon the part of the operators but really is a quid pro quo for the miners' labor. We are inclined to believe that the equities balance in favor of the miners, who should really be considered as third party beneficiaries of the Fund. While we hesitate to differ with the conclusions of some courts of neighboring states, we are firmly convinced that greater justice will prevail in the view that we have taken.

We decide only that the court below had jurisdiction of the res caught by the writ of foreign attachment. We do not intend to interfere with the prerogative of the court below to determine any issues on the merits. We are unable to determine from the present pleadings what the real defense to the plaintiff's claim is. If the defendants elect to file an answer on the merits, their defense will be revealed. Whether it is a valid defense and what law should be applied in the event there is a conflict between the forum and the situs of the trust are questions which must be met if and when they arise.

Order reversed with leave to appellees to file an answer on the merits within twenty days after the filing of this order in the court below.

GUNTHER and WRIGHT, JJ., would affirm upon the opinion of Judge KENNEDY for the court in banc.