**John PAVLOVSCAK, Plaintiff,**

**v.**

**John L. LEWIS, Charles A. Owen, and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund, Defendants.**

**Civ. A. No. 16096.**

United States District Court
W. D. Pennsylvania.
Dec. 15, 1958.

Jerome Libenson, Pittsburgh, Pa., for plaintiff.

Alexander Unkovic, Edward P. Good, Kountz, Fry & Meyer, Pittsburgh, Pa., for defendants.

McILVAINE, District Judge.

The plaintiff filed this action to enforce payments of an alleged pension due him from defendants. Service was made by delivering a copy of the complaint to W. Phillips Palmer, Assistant Administrator and person in charge of an office located at 605 Empire Building in Pittsburgh, Pennsylvania. The return of the United States Marshal also indicates that this was the place of business of the United Mine Workers of America Welfare and Retirement Fund. It also appears that the plaintiff issued a writ of foreign attachment and that was served upon the United States Steel Corporation and the Pittsburgh Consolidation Coal Company. The defendants thereafter filed a motion to dismiss the complaint alleging improper service of process, lack of jurisdiction and venue, and moved to quash return of service of summons and to quash the writ of foreign attachment. This matter came on for hearing and the counsel for the plaintiff advised the Court that he was not seriously pressing the writ of foreign attachment feeling that the service on the defendants was good and that he was interested in obtaining a judgment against the defendants rather than the garnishee.

The principal ground on which the defendants rely is that service was not made in accordance with Rule 4, Federal Rules of Civil Procedure, 28 U.S.C.A., or pursuant to any rule or law of the United States or the Commonwealth of Pennsylvania. They further take the position that the jurisdiction and venue are lacking because this suit directly involves the administration of a trust of movables, the situs of which is located outside the Commonwealth of Pennsylvania.

From the facts as stipulated between the parties, it appears that the United Mine Workers of America Welfare and Retirement Fund of 1950 (hereinafter referred to as the Fund) was created by written instrument known as National Bituminous Coal Wage Agreement of 1950, between certain bituminous coal operators and the United Mine Workers of America. The agreement created was executed in Washington, D. C., and the fund was created on March 5, 1950. It is administered by three trustees appointed by the parties to the agreement. The trustees are: John L. Lewis, a citizen of the State of Illinois; Josephine Roche, a citizen of the State of California; and Charles A. Owen, recently deceased, was a citizen of the State of Florida. The trustees held meetings at the Fund's office in Washington, D. C. They held two emergency meetings in the State of Florida. The principal assets of the Fund are personal property. Numerous residents of the Commonwealth of Pennsylvania receive pensions from the pension fund and as of June 30, 1956, over 61,000 retired miners were receiving pensions. Remittances from the operators are made to the Fund's office in Washington, D. C. There are numerous operators in Pennsylvania who make payments into this fund. Between March 5, 1950, and June 30, 1956, over $832,000,000 has been paid into the fund by the operators and over $365,000,000 has been used for the payment of pensions during that same period of time. The Fund has 441 employees for administration of the fund and there are

42 employees in two area medical locations in Pennsylvania. The Fund has filed 62 suits in this court for failure of operators to remit the royalty payments due.

It is obvious that Pennsylvania is one of the leading coal production states in the United States and necessarily large amounts of royalties are earned, owed, and regularly collected by the Fund in Pennsylvania. Auditors of the Fund come into Pennsylvania to examine and audit the books of the operators. At the time of filing this suit, the defendants maintained a listing in the Pittsburgh telephone directory under the name, United Mine Workers of America Welfare and Retirement Fund, Empire Building, Express 1–1860, and it was in the Empire Building where the United States Marshal served W. Phillips Palmer. The Fund frequently sends examiners into Pennsylvania to examine books of operators. It appears that after the Marshal served Mr. Palmer, notice of this suit was immediately given to officials of the Fund in Washington, D. C., by Mr. Palmer.

When monies are received in Washington, D. C., they go into a general account and then on a basis of statistical analysis the funds are allocated to the pension fund and to the administrative fund or account. The individual served, Mr. Palmer, is paid out of funds put into the administrative account which in turn comes out of the general fund and the general funds are distributed either to the pension fund or the administrative account. It also appears that no accounting of the Fund's activities has been filed in any court of the United States or in any United States Court.

With these facts in mind, we must now turn to resolving the basic question of whether the defendants' motion to dismiss is well taken or not. The plaintiff maintains that there is good service of process under the law of Pennsylvania. The defendant, on the other hand, says that it is a trust and only a trust and that it can only be amenable to the laws of the District of Columbia.

Though it calls itself a trust, we are not convinced that it is a trust in the strict sense of that word. It does rely on some cases in other jurisdictions that would so indicate. See Van Horn v. Lewis, D.C. 1948, 79 F.Supp. 541, 545; Cf. Hobbs v. Lewis, D.C.1958, 159 F.Supp. 282. But the courts of Pennsylvania have recently held that this so-called trust is not a trust in the normal sense, but is rather an unincorporated association. They were aware of the decisions holding that jurisdiction in cases such as this rested solely in the District of Columbia. They as we are were impressed by the thought that the convenience of thousands of miners throughout the land should be considered. The decision of this Court was withheld pending the Pennsylvania Court's decision. The parties to this proceeding were in agreement that the Pennsylvania decision would have great weight with this Court. The Superior Court of Pennsylvania made its decision in Stampolis v. Lewis, 1958, 186 Pa.Super. 285, 142 A.2d 348. Allocatur was refused by the Supreme Court of Pennsylvania on August 19, 1958. Mr. Justice Stewart in a recent opinion in the United States Court of Appeals for the Sixth Circuit before his elevation to the Supreme Court lends support to this thinking when he indicated that while this fund is in some respects similar to charitable trusts, it is not a true charitable trust. Lewis v. Benedict Coal Corp., 6 Cir., 1958, 259 F.2d 346, 355.

This Court not only feels that the views expressed by the Superior Court in the Stampolis case are controlling on this Court as interpreting the law of Pennsylvania, but we feel that it is a sound decision. In that case, it is obvious that the Superior Court rejected the defendants' argument that they are a trust and found that the defendants are an unincorporated association under the Pennsylvania Rules of Civil Procedure. An association means an unincorporated association conducting any business or any activity of any nature whether for profit or otherwise under a common name. Pa.R.Civ.P. 2151, 12 P.S.Appendix. It is

obvious that this Fund was engaging in business—that of collecting royalties from operators and paying them out to miners eligible for them. It was operating under the name of the United Mine Workers of America Welfare and Retirement Fund. It carried out many activities in Pennsylvania: Among others, it brought numerous suits in the Commonwealth of Pennsylvania; it sent its employees into Pennsylvania to examine books of those against whom it had claims; it maintained a listing in the Pittsburgh telephone directory; and it collected large sums of money from Pennsylvania.

Pennsylvania Rules of Civil Procedure, Rule 2156, provides that: " * * * an action against an association may be brought in and only in a county where the association regularly conducts business or any association activity * * * ". It certainly appears that many activities of the association were carried on in Allegheny County such as maintaining a listing in the telephone directory; and the primary concern to the Fund, the collection of monies and the examination of the books of operators. The process herein was served in accordance with Pennsylvania Rule of Civil Procedure 2157 for it was served on the person in charge of the place where the association carried on activities; that is, it was served at the office where it was listed in the Pittsburgh telephone directory.

It is also possible that this Fund could be an entity similar to a corporation within the meaning of Rule 2176 of the Pennsylvania Rules of Civil Procedure.

" 'corporation or similar entity' includes any public, quasi-public or private corporation, insurance association or exchange, registered partnership, partnership association limited, joint stock company or association, 'Massachusetts trust', or any other association which is regarded as an entity distinct from the members composing the association * * * " See Rule 2176.

It is interesting that a note to this Rule indicates that the phrase "corporation or similar entity" includes all associations and business entities which are regarded as separate and distinct from their members, and there was no attempt to enumerate all the various classes of private corporations falling within the definition.

If the Fund is an entity similar to a corporation, service is proper if it is on a person for the time being in charge of any office of the entity. It was argued whether this was an office of the entity, but in any event service is permitted on an entity by sending the copy of the complaint by registered mail direct to the Secretary of the Commonwealth and to the entity at its principal place of business as the Court might direct. See Pennsylvania Rule of Civil Procedure 2180. Here it is obvious that the defendant received speedy notice and that, of course, is the main intention of Rule 2180.

The situation here is somewhat akin to a class suit and the criterion as to service in a class suit is whether the service in question constitutes adequate notice to the class sued to come in and defend. Malarney v. Upholsterers' International Union, D.C.E.D.Pa.1947, 7 F.R.D. 403.

Mr. Palmer, the individual served, testified that he was an employee of the medical fund, but was not authorized to accept the service in this case. However, it is interesting to note that he is paid a salary from the same fund as one of the trustees of the Fund is paid.

Dr. Warren F. Draper testified that he was the executive medical officer of the United Mine Workers of America Welfare and Retirement Fund. This Fund, of course, is the defendant in this case. He, from time to time, visits the local offices, Pittsburgh being one of them. His primary duty is to supervise the medical work of the Fund and Mr. Palmer was the assistant to Dr. Draper for this area.

The defendants have attempted to distinguish the medical office from the pension fund, but this distinction seems

more fanciful than real. The medical fund obviously operates under the United Mine Workers of America Welfare and Retirement Fund, and was created under this Fund and has no independent existence. If this be true, then the service upon Mr. Palmer would be good service upon the Fund under normal procedures by serving a defendant in the office of the defendant where it regularly carries on business. Claycraft Co. v. United Mine Workers of America, 6 Cir., 1953, 204 F.2d 600.

Applying the rationale of Stampolis v. Lewis, supra, we feel that under all the pertinent facts that jurisdiction and venue are not lacking in this Court, and our finding as the ultimate fact after considering all the relevant testimony is that the Fund is doing business in Pennsylvania and that this would be the result in Pennsylvania within the somewhat restrictive ruling of Lutz v. Foster & Kester Co., Inc., 1951, 367 Pa. 125, 79 A.2d 222, although this Court feels that the rule of the Lutz case might be relaxed if it were again before the Supreme Court of Pennsylvania in view of the trend of the judicial decisions throughout the nation and in the Supreme Court of the United States in recent years. See also Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541.

In addition to our thoughts that the defendants are not a trust in the normally accepted sense, we feel that they are a new creature created pursuant to the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 141. They were created by federal law and should be amenable to federal law; there is no reason to resort to the old and ancient theories of trust law. The Fund is a creature of new federal legislation and we must not stifle it. The beneficiaries, the thousands of hard working miners, who have labored years under the ground in creating this Fund, must not be forced to go to Washington, D. C., but should and must be able to go to the federal court in their district in order to have their rights and claims adjudicated in a tribunal convenient to them and certainly not inconvenient to the Fund.

We repeat that this is a new type of relationship that only lately has been developed as a concept of employer-employee relationship. The Fund was created pursuant to Section 302(c) of the Labor-Management Relations Act, 1947, 29 U.S.C.A. § 186(c). As Justice Douglas so aptly pointed out:

"The Labor Management Relations Act expressly furnishes some substantive law. It points out what the parties may or may not do in certain situations. Other problems will lie in the penumbra of express statutory * * * sanction but will be solved by looking at the policy of the legislation and fashioning a remedy that will effectuate that policy. The range of judicial inventiveness will be determined by the nature of the problem. See Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313. Federal interpretation of the federal law will govern, not state law. Cf. Jerome v. United States, 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed. 640. But state law, if compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy. See Board of Commissioners of Jackson County v. United States, supra, 308 U.S. at pages 351–352, 60 S.Ct. at pages 288–289. Any state law applied, however, will be absorbed as federal law and will not be an independent source of private rights." Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 457, 77 S.Ct. 912, 918, 1 L.Ed.2d 972.

Accordingly, defendants' motions to dismiss and to quash service should be denied.