**Will Henry HARPER, Plaintiff,**

v.

**John L. LEWIS et al., Trustees, United Mine Workers of America Welfare and Retirement Fund of 1950, Defendants.**

**Civ. A. No. 632–58.**

United States District Court
District of Columbia.

Aug. 19, 1960.

286

Murdaugh Madden, Washington, D. C., for plaintiff.

Edward L. Carey, Val J. Mitch, and Charles L. Widman, Washington, D. C., for defendants.

LEONARD P. WALSH, District Judge.

This matter comes before the Court on a Complaint for declaratory relief and money damages instituted by Plaintiff against Defendants as Trustees of the United Mine Workers of America Welfare and Retirement Fund. Jurisdiction lies in this Court by reason of the amount in controversy and the situs of the property and funds of the trust, and the Defendants' availability for suit. (See discussion of jurisdiction, infra.)

The Plaintiff (Claimant) Harper is 82 years of age.[1] He alleges that he is and has been fully qualified, since 1946, under the terms and conditions for eligibility under the Trust Indenture, National Bituminous Coal Wage Agreement of 1950, and the pertinent resolutions (Nos. 10, 30, 31, and 32) of the Trustees of the Fund, for a retirement pension benefit in the amount of $100 a month.

Plaintiff began work in the coal mines in 1891, at the age of 13, and became a member of the United Mine Workers of America in 1894 or 1895, and has been a member of the Union ever since.

By his own admission, Plaintiff has limited formal education, having completed only the fourth grade. While he was a justice of the peace in the town of Piper, Alabama, for a number of years, he states that his deficiency in formal education, such as reading and writing, while in that office was compensated for to some extent by assistance given him by certain people in the town.

In 1921, Plaintiff began working for the Little Cahaba Mining Company of Piper, Alabama, and was on the company's payroll until August 16, 1945, with the exception of lay-offs, shutdowns, etc. The company thus employed him at the No. 2 Piper Mine from February, 1921 through August 9, 1945, when a fire broke out in that mine. The fire proved serious enough that the mine never reopened. The Plaintiff, and other men who were laid off as a result of the fire, were not rehired to work in another mine, and were given severance slips some time after the fire so they could be eligible for unemployment compensation.

While Plaintiff was not officially on the payrolls after August 16, 1945, he claims that from August 10, 1945 to September 2, 1946, he did "extra work", such as tending water pumps and inspecting the mine for fire and gas; that he was "given a check, on a company check" for these intermittent services which the company allocated among the unemployed miners so that each received small sums from time to time to alleviate their plight. (There was no evidence of this intermittent employment and apparently

---

1. While certain of the papers on file in this case indicate some question as to Plaintiff's exact date of birth, Plaintiff places his age at 82 as of July 6, 1960, and ap-

parently conceded that he was over 60 years of age (that necessary for retirement) at the time of all applications here in question.

no written record available.) During the period August, 1945 to September, 1946, Plaintiff continued to make payments for monthly rent and medical expenses to the Company Secretary-Treasurer, as had been his custom.

The Plaintiff contends that he looked for other work in the area during the above period, but his search was not successful (he was 67 years old in 1945). He now asserts that on September 2, 1946 he "retired" from the industry, and moved to West Blocton, Alabama, where he and his wife now reside.

Plaintiff's first written application for a pension was dated August 25, 1950. At that time it was apparently customary for the Union to assist persons submitting applications in filling out forms, etc., and ordinarily an officer or an administrative assistant at the Local Union reviewed such application. The required form had to be certified by the Local and the District officers of the United Mine Workers, and the August 25th application was filed with Local 5827 for this purpose.

The evidence was to the effect that Mr. Howard Hillhouse, a Union representative, using letterhead stationery with the Fund's name on it, returned the 1950 application to the Plaintiff for the reason that Plaintiff did not qualify for a pension because he apparently retired from the coal industry prior to May 28, 1946. There was no evidence that this application ever reached the Defendants' Washington office, and Defendants allege that Mr. Hillhouse was never their agent and disavow any relationship with him or responsibility for his actions. There was evidence to the effect, however, that at a later date the Defendants *may* have known of such application and its rejection.

The Plaintiff filed other applications, one of which was dated March 6, 1953, and was subsequently forwarded to the Welfare Fund headquarters. In this application Plaintiff gave his last date of employment with the Little Cahaba Coal Company as August, 1945, and stated that he was last employed by the Herron and Kostelic Coal Co., West Blocton, Alabama (from January to October, 1948). This application was formally acted upon by the Trustees, and a Fund form entitled "Denial of Pension" was subsequently forwarded to Plaintiff, advising him that his application was denied for the reason that "Applicant has not established proof of regular employment in a classified job in the Coal Industry immediately prior to May 29, 1946."

Plaintiff filed a subsequent application, dated November 28, 1955. Apparently no formal action was taken by the Trustees on this application, but Plaintiff was informed by a supervisor in the Review Unit of the Fund that the submission of this application did not warrant further action by the Trustees.

Additional correspondence was exchanged between the Fund and the Plaintiff. In its last transmission to Plaintiff, dated January 21, 1958, the Fund representative referred to its letter dated November 1, 1957, wherein the reasons for denying Plaintiff's application were more fully set forth. This latter correspondence sets forth three main reasons for the denial: the plaintiff was not regularly employed in a classified job in the coal industry immediately prior to May 29, 1946; he had not completed the required 20 years of satisfactory service within the 30-year period prior to March 6, 1953; and, his employment with the Herron and Kostelic Coal Co. could not be credited because that company was a non-signatory company to the Trust Indenture.

At no time was a hearing held before the Trustees of the Fund wherein the Claimant (Plaintiff) was accorded the right to present his case, as it were, directly to the Trustees.

At the trial Defendants introduced evidence to the effect that Plaintiff filed suit in the Tenth Judicial Circuit of Alabama (Action No. 36362–X) against the Trustees of the Fund. The case was dismissed on the grounds that the Court did not have jurisdiction of the matter inasmuch as the Trustees of the Fund

were located in Washington, D. C., and the only service had in Alabama, that made upon Mr. Howard Hillhouse, was not effective as against the Fund inasmuch as Hillhouse was not an agent of the Fund for the purpose of obtaining service of process on the Trustees.[2]

After a review of the evidence and all the exhibits and papers on file in this case, including the so-called case file maintained by the Fund on the Plaintiff's application, this Court is of the opinion that the case of Ruth v. Lewis, D.C.D.C. 1958, 166 F.Supp. 346, 349, is controlling to a great extent. There the suit instituted was somewhat similar to the one here. The main questions were whether the plaintiff had been employed in the coal industry for a period of one year immediately preceding his retirement, and whether he had completed the 20 years' service in the industry. The rule of the court in that case as well as the reasons given therefor are as set out in the extract from the opinion in the case as quoted below:

"All that was before the Trustees was the application which is concededly inaccurate and could not be the basis of a granting of a pension to plaintiff. Plaintiff asks, however, the Court to decide the case before the Trustees decide the validity of any new application based on the facts now attested to.

"Unless the facts are so apparent that to return the case to the Trustees of the Fund would be a useless formality, this Court cannot take upon itself the decision to determine eligibility in the first instance. The legal reasons for this have been stated above and are the same in the review by a Court of any trustee's action. There is also a practical reason for this holding. The trust here involved is quite large * * *. In these circumstances the Court believes it is administrative-

ly simpler and more practical to limit the Court's review to the aplication, the evidence of its support, and in the light of this, whether the Trustees acted in accordance with their fiduciary obligation and properly exercised their discretion.

"The Court feels, in view of the evidence before it, that plaintiff should submit a new application to the Trustees. The complaint is dismissed without prejudice to the filing of a new application based upon the record in this case and to judicial review of the Trustees' determination, as outlined above."

As submitted by counsel for the Defendants, the actual determination of the Plaintiff's application was made only once by the Trustees, i. e., on September 30, 1953. However, while some matters brought forth at the trial were actually in their records or within knowledge of the staff of the Fund (or Trustees), there is no indication that all the facts were, and in fact, there is evidence leading to a conclusion that certain facts were not, before the Trustees as they have been brought forth here. The Trustees should, therefore, be permitted to pass upon this application, with all of the facts as they have been elicited in this case before them.

The important point in Plaintiff's present claim (as perhaps distinguishable from the application acted upon by the Trustees in 1953) is his contention that he did not retire until September 2, 1946, on or about which date he was informed that the mine would not reopen, which in turn prompted his move to a neighboring city.

Plaintiff refuses to equate his date of retirement, which he alleges to be September 2, 1946, with either his last date on the payroll, August 16, 1945, or his last day of employment with the Little Cahaba Mine, August 9, 1945. Since there is no indication that the Trustees

2. There was no indication as to whether an attempt was made to obtain service on any agent or employee of the Fund or whether any attempt was made to file a suit in the Federal courts of Alabama on the basis of diversity.

ruled on the effect of, or knew of, the Plaintiff's availability for employment while awaiting reopening of the mine, it is only fair to Plaintiff and to the Trustees that an opportunity for such a ruling be provided.[3]

The critical date in this case is May 29, 1946. The Plaintiff claims that he need not necessarily have been on the payroll on that date if he was in fact not working because of the fire and was merely waiting for the mine to reopen.[4] In support of his contention, Plaintiff relies on the case of Bednar v. United Mine Workers Welfare & Retirement Fund, Civil Action 1980–52 (unreported), decided by Judge McLaughlin of this Court, wherein a claimant was not employed nor on the payroll on the critical date because of a strike at the coal mine. The findings of fact in that case read in part as follows:

"2. Plaintiff last worked at a mine for wages on March 28, 1946.

"3. The mine at which plaintiff was employed worked for two days following March 28, 1946 [but plaintiff did not].

"4. Plaintiff and other miners were on strike during April and May, 1946, and the first day that said mine worked following the strike was June 3, 1946.

"5. Plaintiff went to the mine on June 3, 1946, prepared to continue his employment and was then told by the owner of the mine that because he was over age, plaintiff could no longer be employed.

"6. Plaintiff was employed in the coal mining industry after May 28, 1946."

The Court there, in finding for the claimant, as a conclusion of law found that the Plaintiff ceased to be employed for wages through no fault of his own on June 3, 1946, and was thus entitled to a pension as of that date.

In this case the Plaintiff concedes the inaccuracy of his applications with respect to his employment with the Herron and Kostelic Coal Co., in that he now says he was never an employee of that company.[5] There also appears to be an admission on the part of the Defendants that the Plaintiff does meet the 20-year service requirement for retirement purposes.[6]

Therefore, at least two of the reasons for denial of Plaintiff's application by the Fund representatives as stated in their letter of November 1, 1957, appear no longer to be in contention. The question of whether or not the Herron and Kostelic Coal Co. was a signatory operator is moot; and the question of Plaintiff's 20-year service within the 30 years prior to retirement may well be answered to the satisfaction of the Trustees.[7]

It appears that the Trustees have some discretion in their interpretation of the

---

3. Transcript, page 176.
   "[Defendants' counsel] They told him he was not working in the coal industry after May 28, 1946.
   "The Court: But I am speaking of the fact,—do they evaluate the fact that he was working there and was available for continued employment, but the coal mine burned up?
   "A. Specifically, I don't know, Your Honor."

4. James McMurray, financial secretary of Local 5827 of the United Mine Workers in 1945 and 1946, testified as follows:
   "Q. After the fire, immediately after the fire and for a number of months after the fire, did you, yourself, know whether the mine would ever reopen? A. I did not.

"Q. There had been no official word given on it right after the fire, had there? A. No, sir."

5. Page 21 of the Transcript: "Q. [Counsel]: But you didn't work there [at the Herron and Kostelic Coal Co.]?
   "A. [Claimant]: No, Sir."

6. See Transcript page 113.

7. However, with respect to the matter of 20 years of service, it would be helpful if the Trustees would interpret that portion of Resolution 30 which states that an applicant shall be eligible for a pension if he meets the following requirement:
   "Retired from or ceased work in the bituminous coal industry after May 28, 1946, following a period of regular employment in the coal industry immediately

Coal Wage Agreement as to whether a claimant qualifies for retirement though not actually employed or on a payroll on or after the critical date through no fault of his own.[8]  Meanwhile, the Plaintiff contends that his case is stronger than that of the claimant in the Bednar case in that there was a break in employment prior to the non-employment (strike) period in that case, whereas in the instant case there was no break in employment prior to the fire, but that, in fact, but for the natural disaster of the fire he could have, in the normal course of events, continued his employment well past the critical date.

It is not clear to the Court, and the evidence did nothing to clarify the matter, as to whether the Trustees considered the possibility of the Plaintiff having performed "extra work" (Transcript pages 9, 10) and, as noted earlier, was available for employment subsequent to May 28, 1946.

Because there were certain misstatements in Plaintiff's earlier applications, the Court considers that the Trustees should have an opportunity to consider a new application formed on the basis of the evidence adduced at this trial, and that the Trustees should make findings here, as in the Ruth case, before a court conducts a final review of their action. Plaintiff should submit a new application to the Trustees, effective as of the date of the institution of this suit (March 11, 1958), incorporating the facts as brought forth at the trial.  The Court feels here, as in the case of Hobbs v.

Lewis, 1958, 159 F.Supp. 282, that because the Plaintiff has abandoned his application containing misstatements as set forth above, (1) his claim should be based on the evidence adduced at this trial, and (2) the Trustees should be permitted to pass upon such application in accordance with their fiduciary obligation and in the proper exercise of their discretion.  See also Ruth v. Lewis, supra.

After observing the demeanor of the Plaintiff as a witness, and taking into consideration his limited education, and the fact that other persons helped or actually filled out his applications for the pension, this Court concludes that the misstatements contained in his application were not willful misrepresentations such as might deprive him of an impartial consideration of his claim de novo as it has been brought out at this trial. The filing of a new application, based on the record in this case, and a subsequent review, if found necessary, of the Trustees' determination as outlined above is considered to be a practically and legally sound determination.

In the light of the foregoing, the Complaint is dismissed without prejudice to further review, as, if and when the latter may be deemed necessary.

There is a great deal of controversy and diversity of opinion among the courts as to what type of trust is here involved,[9] and whether beneficiaries of the Fund may sue the Trustees on the basis of a contractual right,[10] or whether the Trustees may be sued by beneficiaries of the

---

preceding May 29, 1946; *provided* that if he had retired from or ceased working in the bituminous coal industry prior to May 29, 1946, he shall be eligible for a pension only upon the completion of 20 years service in the bituminous coal industry, and meets the other requirements of eligibility * * *." (Emphasis supplied.)

If the proviso means, as it seems to suggest, that a person who, retired or left the industry prior to May 28, 1946, must start anew on his 20-year service period, i.e., must work 20 years subsequent to May 28, 1946, in order to retire with a pension, the proviso does not aid the Plaintiff here.  Nonetheless, the resolution

of this matter should be helpful for purposes of possible later review of the case.

8.  See Transcript pages 128, 129.

9.  Hobbs v. Lewis, D.C.D.C.1958, 159 F. Supp. 282 says it is not a trust;  Van Horn v. Lewis, D.C.D.C.1948, 79 F.Supp. 541 calls it a charitable trust;  while Ruth v. Lewis, D.C.D.C.1958, 166 F. Supp. 346 claims it is a noncharitable trust.  See also Barlow v. Roche (Lewis), D.C.Mun.App.1960, 161 A.2d 58.

10.  Hobbs v. Lewis, supra, 159 F.Supp. at page 286, claims the beneficiary has a contractual right.  It is noted that retirement funds are different from severance funds, however.

Fund only by stating their claim in the nature of an action in equity rather than law.[11]

There is also a diversity of opinion among the courts as to the amount of judicial review available in cases similar to this one.[12] Certainly, the furtherest the courts have gone in establishing the extent of judicial review is that expressed by the court in Kennet v. United Mineworkers, etc., 1960, 183 F.Supp. 315, 318:

> " * * * The Court will review the legal rights of the plaintiff and determine whether any erroneous decision has been reached by the trustees on questions of law. It will also review, to a limited extent, decisions of the trustees on questions of fact; certainly whether there is any substantial evidence sustaining the decision on questions of fact. The Court would not go as far as to review the question whether their decision is contrary to the weight of evidence, but it will determine whether there is substantial evidence in the record as a whole sustaining their finding. Finally, and it is not denied that this may be done, the Court will review the question whether the action of the trustees is in any way arbitrary or capricious."

However, on the basis of the disposition of this case, as noted above, the Court need not decide the controversial questions as noted above and sets them out here only to point out the division of opinion that exists in the courts with respect to many matters arising under coal industry retirement and welfare fund cases.

■■ In conclusion, in amplification of this Court's opinion that the matter here is dismissed *without prejudice to possible further review,* with reference to the question of where the jurisdiction to hear this matter may lie, should further court review be required after the Trustees have acted on the claimant's new application, it is the opinion of this Court that such action may be heard in this Court; or, should the claimant be able to obtain proper service on the Trustees, their agents, or employees[13] in his own state, then he may file his action in the Federal District Court in the area wherein he resides. It is considered that a claimant whose application for a pension has been denied by the Trustees of the Fund should not be compelled to bring suit in the District of Columbia. The few Federal courts which have ruled on this question are in disagreement. However, it is considered that the better reasoned position is that permitting a claimant to sue in a tribunal convenient to him.

The case of Herr v. Lewis, et al., No. 576 Civil (D.C.S.D.Ind.1954) involved an attempted service upon a representative of the United Mine Workers Union, as against the Trustees of the Fund. The court there granted a motion to dismiss for improper venue and lack of jurisdiction.[14] It is noted, however, that the

---

11. Barlow v. Roche (Lewis), supra, and 2 Scott, Trusts, §§ 198, 198.1 (1956).

12. Compare Hobbs v. Lewis, supra, and Kennet v. United Mineworkers of America, D.C.D.C.1960, 183 F.Supp. 315 with Ruth v. Lewis, supra.

13. As opposed to service on a union employee as was done by the Plaintiff earlier. See page 5.

14. The Court's order reads in part as follows:
   "The Court * * * finds that the defendant * * * is a resident of the Southern District of Indiana but that he is not an agent for the purpose of service of process on the Trustees of the United Mine Workers of America Welfare and Retirement Fund and that he has never had authority to accept service of process in the State of Indiana on behalf of said trustees. By reason of the foregoing the return of service of summons as to each defendant in this case should be quashed. The Court also finds that venue in this case has been improperly laid in the Southern District of Indiana and that venue properly lies in the District of Columbia wherein the trustees reside and maintain their principal office and administer the trust res here involved."

individual served there was an employee of the Union and not an employee of the Fund, as the Court understands it.

On the other hand, in Pavlovscak v. Lewis, 1958, 168 F.Supp. 839, 843, affirmed 3 Cir., 1960, 274 F.2d 523 (3 L.Ed.2d 1947, n. 4), the United States District Court for the Western District of Pennsylvania held recently that the Mine Workers Fund was not a trust in the normal sense, but rather an unincorporated association, and that process served, in accordance with the Pennsylvania Civil Procedure Rules, on the person in charge of the place where such association carried on activities would not be quashed.[15]

This Court is of the opinion that right and justice should know no boundaries.[16] Yet, as we see in this case, the Fund has immunized, or attempted to immunize itself from service of process elsewhere than in the District of Columbia with little regard for ill health and old age of the claimants, and the possible attendant hardships of expense, difficulty of transporting witnesses, etc., that this may work on the claimants who must litigate their claims in distant Washington, D. C. However, what is, or may be, more important, the Trustees have wrapped themselves in the cloak of immunity from service of process, as exemplified by their refusal to accept service outside the geographic boundaries of the District of Columbia, without proper regard, it would appear, for the effect that such adjudication may have on the substantive rights of the claimants. The merits of a particular case could, it would seem, be more thoroughly explored and the facts more fully presented were a case to be adjudicated in the geographic area from which the claim for retirement arises.

A discussion and opinion with respect to the defenses of the statute of limitations and laches are considered to be precluded by the disposition of the case as noted herein.

Counsel for the Plaintiff is directed to submit an appropriate order of dismissal of the complaint without prejudice.

15. The court's opinion reads in pertinent part as follows:

"Applying the rationale of Stampolis v. Lewis, supra [1958, 186 P.Super. 285, 142 A.2d 348], we feel that under all the pertinent facts that jurisdiction and venue are not lacking in this Court, and our finding as the ultimate fact after considering all the relevant testimony is that the Fund is doing business in Pennsylvania and that this would be the result in Pennsylvania within the somewhat restrictive ruling of Lutz v. Foster & Kester Co., Inc., 1951, 367 Pa. 125, 79 A.2d 222, although this Court feels that the rule of the Lutz case might be relaxed if it were again before the Supreme Court of Pennsylvania in view of the trend of the judicial decisions throughout the nation and in the Supreme Court of the United States in recent years. See also Partin v. Michaels Art Bronze Co., 3 Cir., 202 F.2d 541.

"In addition to our thoughts that the defendants are not a trust in the normally accepted sense, we feel that they are a new creature created pursuant to the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 141. They were created by federal law and should be amenable to federal law; there is no reason to resort to the old and ancient theories of trust law. The Fund is a creature of new federal legislation and we must not stifle it. The beneficiaries, the thousands of hard working miners, who have labored years under the ground in creating this Fund, must not be forced to go to Washington, D. C., but should and must be able to go to the federal court in their district in order to have their rights and claims adjudicated in a tribunal convenient to them and certainly not inconvenient to the Fund."

16. Jurisdiction and venue, of course, may and often do have geographical boundaries; however, as noted in the Pavlovscak case, the geographical boundaries for jurisdiction and venue in cases similar to that before this Court need not necessarily be confined to the borders and boundaries of the District of Columbia.