Charlie **RITTENBERRY**

v.

John L. **LEWIS** et al.

Joe **SISK**

v.

John L. **LEWIS** et al.

William Hamilton **MAYES**

v.

John L. **LEWIS** et al.

Gladstone **HACKNEY**

v.

John L. **LEWIS** et al.

George **RAMSEY** d/b/a Ramsey Coal Company

v.

**UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND.**

Civ. A. Nos. 4104, 4162, 4161, 4116, 4082.

United States District Court
E. D. Tennessee, S. D.

Oct. 9, 1963.

718

H. H. Gearinger, Chattanooga, Tenn., William M. Ables, Jr., South Pittsburg,

Tenn., Sizer Chambliss, Chattanooga, Tenn., for plaintiffs.

E. H. Rayson, R. R. Kramer, Knoxville, Tenn., Charles L. Widman, Washington, D. C., for defendants.

FRANK W. WILSON, District Judge.

These cases are before the Court upon the defendants' motions to dismiss or in the alternative to quash the service of process. The actions were instituted in each of the first four cases against the trustees of the United Mine Workers of America Welfare and Retirement Fund (hereinafter referred to as the "Fund") which was created by the trust indenture contained in the National Bituminous Coal Wage Agreement of 1950, pursuant to authority in the Labor Management Relations Act of 1947 (29 U.S.C. § 186 (c)). In the Ramsey case suit was instituted solely against the Fund. The plaintiffs in the first four cases contend that they have met all of the qualifications requisite for receiving a pension from the Fund and that the defendant trustees have arbitrarily and capriciously refused the plaintiffs' claims. The suits seek to establish that the plaintiffs are Fund beneficiaries and entitled to pensions. The plaintiff, Ramsey, a coal producer, seeks the refund of monies allegedly illegally collected by the Fund. Service of process upon the trustees and the Fund was effected in each case under authority of Section 20–223, Tennessee Code Annotated, as amended by Chapter 254 of the Public Acts of Tennessee, 1963.

The defendants' motions in all of the cases raise identical issues for the most part. A number of grounds are asserted in support of the defendants' motions to dismiss or, in the alternative, to quash the service of process. Consideration will be given initially only to the first four cases, Rittenberry, Sisk, Mayes, and Hackney, and to each ground of the motions in these cases in the following order: (1) and (2) process under Section 20–223, T.C.A., is invalid and ineffective in that the Trust Fund is not a suable

entity and the statute does not provide for service of process upon the trustees in their individual capacity; (3) the Trust Fund and the trustees are not doing business in Tennessee as contemplated by Section 20–223, T.C.A.; (4) the Trust Fund is a trust of movables with its situs in the District of Columbia and its administration may be reviewed only by the courts of that jurisdiction; and (5) the attempted service of process violates the due process and full faith and credit provisions of the United States Constitution.

Grounds (1) and (2) as heretofore stated complain of the service of process under Section 20–223, Tennessee Code Annotated, which, as amended by Chapter 254 of the Public Acts of Tennessee for 1963, provides for substituted service upon "non-resident trusts" doing business in Tennessee.[1] The defendants contend that the statute is in derogation of the common law and should be strictly construed. Tabor v. Mason Dixon Lines, Inc., 196 Tenn. 198, 264 S.W.2d 821; Ellis v. Georgia Marble Co., 191 Tenn. 229, 232 S.W.2d 45. Here service was effectuated upon the trustees, rather than the trust as such, which is not provided for in a literal reading of the statute. It is also pointed out by the defendants that service would not be maintainable if effected solely upon the "trust." Yonce v. Miners Memorial Hospital Association, D.C., 161 F.Supp. 178. Thus the question presented is whether the statutory language is broad enough to validate service upon the trustees of the Trust Fund and the applicable rules of statutory construction. Conceding that a statute in derogation of the common law must be given a strict construction, " * * * it should nevertheless be construed sensibly and in harmony with the purpose of the statute, so as to advance and render effective such purpose and the intention of the legislature." Harbison v. Welch, 195 Tenn. 191, 258 S.W.2d 755, quoting 50 Am.Jur., Statutes, Sec. 404. The legislature will not be presumed to have done a useless and vain thing. Texas Gas Transmission Corp. v. Atkins, 205 Tenn. 495, 327 S.W. 2d 305. The Court is of the opinion, therefore, that the statutory amendment contemplated and was sufficient to accomplish the purpose of regulating the doing of business in Tennessee by non-resident trusts by providing for substituted personal service upon the trustees of the trust fund through the secretary of state. It is not deemed necessary at this time to decide the propriety of serving the "trust."

Turning now to the third ground asserted in the defendants' motions to dismiss, wherein it is asserted that the defendants are not doing business in Tennessee as required by Section 20–223, T.C.A., in order to sustain substituted personal service upon the trustees through the secretary of state, the following appears undisputed from the af-

1. "Any unincorporated association or organization, whether resident or nonresident, including nonresident partnerships and *nonresident trusts*, doing or desiring to do business in this state by performing any of the acts for which it was formed, shall, before any such acts are performed, appoint an agent in this state upon whom all process may be served, and certify to the clerk of the circuit court of each county in which said association or organization desires to perform any of the acts for which it was organized the name and address of such process agent. If said unincorporated association or organization shall fail to appoint the process agent pursuant to this section, all process may be served upon the secretary of the state of Tennessee. Upon such service, the secretary of state by registered return-receipt mail shall forward a copy of the process to the last known address of such unincorporated association or organization. Service upon the process agent appointed pursuant to this section or upon the secretary of state, if no process agent is appointed, shall be legal and binding on said association or organization, and any judgment recovered in any action commenced by service of process, as provided in this section, shall be valid and may be collected out of any real or personal property belonging to the association or organization." (Emphasis supplied to indicate 1963 amendment.)

fidavits and interrogatories of the parties:

Under the National Bituminous Coal Wage Agreement the Fund has been entitled to collect 30¢ per ton and since 1952, 40¢ per ton, upon all coal mined in Tennessee under the Agreement. Since its inception in 1950 the Fund has accordingly collected royalties upon much of the coal mined in Tennessee. The Fund admits that "a substantial amount of money" has been raised from coal royalties in Tennessee, but states that the records are too voluminous to ascertain the exact amount collected. Likewise, it is conceded that "there are numerous beneficiaries of the Trust Fund located in Tennessee," but states that to separate these from the 1,500,000 beneficiaries of record as of June 1962 would be too onerous a burden. The Fund has itself resorted to court action in courts located within Tennessee to collect royalties upon coal mined within this state upon numerous occasions, having twelve such suits currently pending in which royalties in the sum of $801,149.76 are sought to be collected. The Fund maintains an area medical office in Knoxville, Tennessee for the purpose of "making arrangements for the purchasing of medical care for Trust Fund beneficiaries." Representatives of the Fund visit applicants in order to assist such applicants in compiling information and reports necessary to apply for Fund benefits. Auditors representing the Fund visit Tennessee to check employers' records, nine such auditors having been in the state at various times during the past three years to make checks upon coal production and royalty payments.

In the opinion of the Court these facts clearly satisfy the test of doing business in Tennessee as that test is applied in the courts of this state. As stated in the case of Smartt v. Coca Cola Bottling Corp., 318 F.2d 447 (C.C.A. 6 Cir., 1963), the " * * * [Tennessee] test appears [to be] satisfied when the minimal contacts making it fair and reasonable to exercise judicial power are established."

The activities of the Fund are not unlike those of an insurance company or association. The form of business organization, whether that of a trust, such as the defendant, or that of a corporation or association, as more customarily met with in the insurance field, does not alter the nature of the activities engaged in within the state nor alter the test of whether such activities met the "doing business" requirement of the substituted service statute. Substituted service of process under Tennessee law upon an insurance association has been upheld upon the basis of much less activity within the state than has been shown in the principal case. In the case of Schutt v. Commercial Travelers Mutual Accident Ass'n, 229 F.2d 158 (C.C.A. 2 Cir., 1956) mail order activities of a non-resident insurance carrier were held sufficient to satisfy the "doing business" requirement in the Tennessee statute.

The Fund contends that Section 20–223, T.C.A., as interpreted by the case of McDaniel v. Textile Workers Union of America, 36 Tenn.App. 236, 254 S.W.2d 1, permits substituted service of process only in actions seeking redress of a "wrong committed by one doing business within the state and arising out of business done within the state." While the McDaniel case may be distinguished as involving a tort action, the rule of that case would nevertheless be satisfied under the facts of this case. The primary activity of the trustees is the collection and payment of money. Their activity both in the collection and payment of money in Tennessee constitutes "minimum contact" and it is the payment feature of the business done that is the subject of this litigation.

Turning to the next contention of the defendants, it is stated that this Court would have no jurisdiction over the administration of a trust of movables which has its situs in the District of Columbia. In this connection the defendants place their principal reliance upon the case of Hobbs v. Lewis, 197 Tenn. 44, 270 S.W.2d 352 (1954), as establishing the law in

Tennessee to be followed in this diversity action.[2] The Hobbs case involved a similar action to that brought by the plaintiffs here. In that case, Hobbs deemed himself entitled to a pension from this same defendant, the United Mine Workers of America Welfare and Retirement Fund. Since he could not get personal service in Tennessee, Hobbs sought to attach a debt owing the Fund by a third party. The bill was dismissed by the Chancery Court of Hamilton County, Tennessee. Upon appeal to the Supreme Court of Tennessee, the Court stated:

> "Since the situs of this trust of movables is at Washington, D. C., it seems necessary to hold, both by reason of principle as well as persuasive precedent, that the Courts of Tennessee have no jurisdiction to entertain Hobbs' suit for any purpose connected with the administration of that trust. * * * "

No other Tennessee case law is cited by the parties and none has come to the attention of the Court. However, the Hobbs case has been held to prevent a transfer from the District Court for the District of Columbia to a Federal District Court in Tennessee, since, in the absence of jurisdiction of the state courts over the action, there could be no jurisdiction in a Tennessee Federal Court. See Lewis v. Hogwood, 112 U.S.App.D.C. 105, 300 F.2d 697 (1962); 88 A.L.R.2d 493, 504. The latter case, without comment on the rule of the Hobbs case, merely recognized it as the law of Tennessee.

Subsequent to the Hobbs decision, however, Section 20–223, T.C.A., was amended so as to include non-resident trusts. As amended, one purpose of Section 20–223, T.C.A., is to render non-resident trusts doing business in Tennessee subject to service of process in the courts of this state. The business done by the Fund in Tennessee has heretofore been discussed. The Hobbs case was prior to the statutory amendment, as was the Hogwood case, and the Hobbs case consequently did not involve either the substituted service statute or the question of the Fund's doing business in Tennessee. It is therefore necessary for this Court to determine what effect, if any, the 1963 amendment of Section 20–223, T.C.A., so as to include non-resident trusts, had upon the rule in the Hobbs case.

The rule in the Hobbs case is based upon the general rule in the law of trusts that the administration of trusts of movables should be supervised by the courts of the state in which the trust is located. People v. First National Bank, 364 Ill. 262, 4 N.E.2d 378, 108 A.L.R. 277; Restatement of Conflict of Laws, Sec. 299. See also Living Trusts of Movables in the Conflict of Laws, 45 Harvard L.Rev. 969. The rule has been developed by the courts upon the rationale that the courts must speak with but a single voice in directing a trustee in the administration of a trust, and that this can be achieved only when jurisdiction over the trust is vested in but a single court. The doctrine of *forum non conveniens* is then applied to deny jurisdiction to all but the court at the situs of the trust. The same theoretical uniformity of instruction and interpretation of beneficiaries' rights would doubtless be desirable to the insurance industry generally, but it has never been suggested that *forum non conveniens* would apply to achieve such a result, nor has any lack of uniformity in court interpretation appeared to seriously impair the proper functioning of the industry. When a trust seeks to operate upon a nationwide basis, as does the Welfare Fund here, with 1,500,-000 beneficiaries scattered across the nation, it is difficult to understand how a rule of convenience in the law of adminis-

---

2. The plaintiff appears to contend that these suits are based upon a federal statute, with the result that the diversity rule of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, would not apply to govern the jurisdiction of this Court. Although the Welfare Fund must qualify under the Taft-Hartley Act, 29 U.S.C. § 186(c), Congress did not by the Taft-Hartley Act vest jurisdiction in federal courts to supervise the Fund's administration.

tration of trusts could so dominate the judicial mind as to cause it to disregard the rights and convenience of 1,500,000 beneficiaries across the nation in favor of a rule that accords a theoretical uniformity of instruction to the trustee.[3] Under such a rule the Fund could locate in Hawaii, where presumably no miners live, and for all practical purposes escape any court supervision of the rights of the beneficiaries. To a destitute and disabled miner in Tennessee, Washington, D. C. can be about equally as unavailable as Hawaii

The issue here, however, is not the wisdom or lack of wisdom of the rule in the Hobbs case. This Court is bound by that rule unless it has been changed by the 1963 amendment to Section 20–223, T.C.A., which purports to make non-resident trusts doing business in Tennessee subject to service of process in the courts of this state.

■ As pointed out above, the rule in the Hobbs case is based upon the doctrine of *forum non conveniens*. It is a court adopted rule of practice. It is not based upon any statute that would confer or deny jurisdiction to the courts of this state. It is likewise not based upon any constitutional limitation that would deprive courts of this state of jurisdiction. It follows that the legislature may change the rule in the Hobbs case and confer jurisdiction upon the courts of this state over non-resident trusts doing business within the state. It is the opinion of the Court that the legislature did just this and that Hobbs has been overruled by the 1963 amendment to Section 20–223, T.C.

A., insofar as that case sought to establish a rule denying jurisdiction over non-resident trusts "doing business" in Tennessee, as the term "doing business" is interpreted by the courts of this state.

■ Turning finally to the contention of the defendants that service of process under Section 20–223, T.C.A., here attempted violates the due process and full faith and credit clauses of the United States Constitution, the Court is of the opinion that the contention is without merit.

A question advanced in the McDaniel v. Textile Workers Union of America case, supra, was stated as follows:

"As applied to such a non-resident organization, are the attempts of a state to save its citizens and residents the inconvenience of going to a foreign jurisdiction to obtain redress for wrongs committed within the State and growing out of business conducted within the State invalid as a denial of due process or the equal protection accorded citizens of the United States under the Fourteenth Amendment?"

The Tennessee Court of Appeals answered this question in the negative, quite properly relying upon International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. Likewise there is no denial of full faith and credit in a diversity action in the absence of state authority. In dealing with a similar contention in the case of Schutt v. Commercial Travelers Mutual Accident Ass'n, 229 F.2d 158 (C.C.A. 2 Cir., 1956), where the constitutionality of service of

---

3. The rule in the Hobbs case appears to have been followed in some other jurisdictions : see Wilder v. United Mine Workers of America Welfare and Retirement Fund, (Court of Appeals, Kentucky) 346 S.W.2d 27; United Mine Workers of America v. Daniel, (Court of Appeals, Kentucky) 317 S.W.2d 183; Fikes v. Fund, (Cir. Ct. 10th Jud.Cir. of Ala.) 36362–X; Kane v. Lewis, (S.Ct. of N.Y.) 282 App.Div. 529, 125 N.Y.S.2d 544 (1953). The courts of Pennsylvania have declined to follow the Hobbs case,

holding that the courts of that state would have jurisdiction of actions brought against the Fund by residents claiming rights as beneficiaries. See Myhalyk v. Lewis, 398 Pa. 395, 158 A.2d 305, 88 A.L. R.2d 486, cert. denied 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed.2d 1022; Stampolis v. Lewis, 186 Pa.Super. 285, 142 A.2d 348, cert. denied 359 U.S. 907, 79 S.Ct. 582, 3 Cir., 3 L.Ed.2d 572; and Pavlovscak v. Lewis, D.C., 168 F.Supp. 839; 274 F.2d 523, cert. denied 362 U.S. 990, 80 S.Ct. 1078, 4 L.Ed.2d 1023.

process in Tennessee on a non-resident mail order insurance company was raised, the Court stated:

"We think a fair balancing of the inconveniences discloses a situation which is unduly burdensome and in a high degree unjust to the holders of defendant's policies and that consequently the legislation in question does not run counter to the due process clause of the Constitution."

The Court has heretofore decided the question of whether or not the Fund is doing business in Tennessee so as to allow valid service of process under T.C.A. § 20–223 and a decision has also been rendered on the question raised by the trustees challenging this Court's jurisdiction over a trust of movables with its situs in Washington, D. C. These holdings would apply in the suit of George Ramsey d/b/a Ramsey Coal Company which the Court will now discuss insofar as different grounds are asserted in support of the trustees' motion.

 Plaintiff sought to secure service of process against the United Mine Workers of America Welfare and Retirement Fund rather than the individual trustees. T.C.A. § 20–223, as amended in 1963, provides for service of process on "non-resident trusts" under certain circumstances. A literal reading would lead to the conclusion that the trust entity could be sued as such. Defendant contends that the trust must be sued through its trustees. Yonce v. Miners Memorial Hospital Association, (D.C.W. D.Va.) 161 F.Supp. 178, 188; Restatement of the Law of Trusts, (2d Ed.) Vol. 1, Sec. 2, p. 2. As a general rule, it does appear that in suits against a trust, the trustee is the proper party defendant. 54 Am.Jur., Trusts, Secs. 570, 584, 586, 588. The Court is of the opinion that the better rule is to require service upon the trustees in suits against the trust and that appears to be in accordance with the overwhelming weight of authority. However, the plaintiff will be allowed to amend its complaint so as to name the trustees as defendants and secure service of process accordingly, unless stipu-

lation can be made by the parties with regard to service. The plaintiff will have ten (10) days from entry of an order in accordance with this opinion within which to amend this action or it will be dismissed.

The parties will prepare orders pursuant to the findings of the Court in this opinion as their interests may appear.