**George RAMSEY, d/b/a Ramsey Coal Company**

v.

**UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND et al.**

**Marshall MEEKS, d/b/a Marshall Meeks Coal Company**

v.

**UNITED MINE WORKERS OF AMERICA WELFARE AND RETIREMENT FUND et al.**

**Civ. A. Nos. 4082, 4294.**

United States District Court
E. D. Tennessee, S. D.

July 16, 1964.

Ables & Ables, South Pittsburg, Sizer Chambliss, Chattanooga, Tenn., for plaintiffs.

Kramer, Dye, McNabb & Greenwood, Knoxville, Tenn., Charles L. Widman, Val J. Mitch, Harold H. Bacon, Washington, D. C., for defendants.

FRANK W. WILSON, District Judge.

These cases are before the Court upon motions for summary judgment filed by the defendants pursuant to Rule 56, Federal Rules of Civil Procedure, 28 U.S.C. The defendants' motions raise identical issues in both cases.

The plaintiff, George Ramsey, d/b/a Ramsey Coal Company, filed an original

complaint against the defendant trust upon April 8, 1963, seeking to recover certain monies alleged to have been illegally paid unto the defendants. Jurisdiction is based upon diversity of citizenship and amount in controversy. It is alleged that the monies were paid by reason of force of arms and duress, that the payments were not made pursuant to the terms of a contract entered into by the parties in good faith and that the contract would not satisfy the requirements of Section 302(c) (5) of the Taft-Hartley Act [29 U.S.C.A. § 186(c) (5)]. Although the nature of the contract referred to in the complaint is not specified, it is undisputed that the contract is the National Bituminous Coal Wage Agreement of 1950, as amended, (hereinafter referred to as the National Wage Agreement) executed by the United Mine Workers of America and the plaintiffs.

The defendant, by affidavit in support of its motion for summary judgment, has filed a photocopy of the National Wage Agreement entered into by and between the plaintiff, George Ramsey, and the United Mine Workers of America, under the terms of which contract, it is contended, all payments were made to the defendant, the Welfare and Retirement Fund. By further affidavits the defendant seeks to establish that the plaintiff, Ramsey, ratified the National Wage Agreement by making periodic payments and also seeks to establish that Washington, D. C., would constitute the proper forum for determining the applicable statute of limitations. The plaintiff has filed no counter-affidavits and the factual matters set forth in the defendants' affidavits are therefore not disputed in the record.

The plaintiff, Marshall Meeks, d/b/a Marshall Meeks Coal Company, filed a complaint upon April 10, 1964, containing allegations quite similar in all respects to those in the Ramsey case. In the Meeks case the defendants' motion for summary judgment merely refers to the briefs and affidavits in the Ramsey case and there has been no showing that Meeks executed the National Bituminous Coal Wage Agreement of 1950. The plaintiffs, however, in their brief admit that the issues raised by both motions are the same and the motions will therefore be decided upon that basis.

The following contentions are made in the defendants' motions for summary judgment:

(1) The agreement was not entered into by reasons of duress by the United Mine Workers of America, but should the Court find duress sufficiently alleged in the complaint it conclusively appears that the agreement was subsequently ratified.

(2) The alleged duress by the United Mine Workers of America is not a bar to defendant trustees' recovery of royalties accrued, nor a basis for plaintiff to recover back such payments.

(3) The National Bituminous Coal Wage Agreement of 1950 and the declaration of trust contained therein meet the requirements of the Labor Management Relations Act of 1947.

(4) The plaintiffs' actions are barred by the appropriate statute of limitations.

The plaintiffs have conceded that the defendant is correct in its second contention, in that under the holding of the Court in the case of Lewis v. Benedict Coal Co., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960), the Welfare Fund would not be affected by any duress of the United Mine Workers in the execution of the contract and no right of recovery of funds so paid unto the Welfare Fund would exist because of any such duress. In view of this concession, the Court need not decide the merit of the defendants' first contention as stated above. The plaintiffs, however, asserted in their brief their respective right to recover upon the alternate contention that the National Bituminous Coal Wage Agreement of 1950, and the declaration of trust contained therein, do not meet

the requirements of the Labor Management Relations Act of 1947. The plaintiffs also resist the defendants' contention that the statute of limitations has run against any portion of their respective claims.

Turning to the third proposition asserted by the defendants in their motion, the question raised is whether or not the National Wage Agreement is in violation of Section 302(c) (5) of the Taft-Hartley Act. [29 U.S.C.A. 186(c) (5)]. Section 302 allows employers to make payments to employee representatives for a trust fund upon certain conditions, one of those conditions being the following proviso or limitation in sub-section (c) (5) of Section 302:

> "(P)rovided, That * * * (5) *the detailed basis on which such payments are to be made is specified in a written agreement with the employer,* and employees and employers are equally represented in the administration of such fund, together with such neutral persons as the representatives of the employers and the representatives of the employees may agree upon * * *." (Emphasis supplied).

The declaration of trust in the National Bituminous Coal Wage Agreement of 1950, as amended, after providing for the appointment of trustees in a manner that accords with Section 302(c) (5), provides as follows:

> "It is further agreed that the detailed basis upon which payments from the Fund will be made shall be resolved in writing by the aforesaid Trustees at their initial meeting, or at the earliest practicable date that may by them thereafter be agreed upon."

The defendants contend that the provision of the National Wage Agreement satisfies the above-quoted requirement of the Act; the plaintiffs assert that it does not.

The issue therefore presented for decision of the Court is whether the provisions of the National Wage Agreement for the appointment of trustees with further provisions that the trustees shall in turn agree in writing upon the detailed basis for making payments from the Fund satisfies the statutory requirement that "the detailed basis on which such payments are to be made is specified in a written agreement with the employer". The defendant has cited unto the Court a number of cases which it contends establish the legality of the Welfare Fund provisions in the National Wage Agreement. The plaintiff on the other hand relies almost wholly upon the legislative history of the statute and its wording as support for the plaintiffs' contention that the Welfare Fund provisions of the National Wage Agreement do not comply with the statute.

The defendant has cited numerous reported and unreported cases in which beneficiaries of the Welfare Fund have sought to enforce their rights as being material to the issue here presented.[1] The defendants seek to have the Court draw the conclusion that these enforcement actions are proof that a valid trust was established. The plaintiff likewise has cited reported and unreported enforcement actions by beneficiaries,[2] but seeks to have the Court draw the conclusion that these enforcement actions are proof that an *improper use of trust funds* has been effected. It is difficult for the Court to see where the enforcement action cases cited either by the defendant or by the plaintiff contribute to the solu-

1. Hobbs v. Lewis, (D.C., D.C., 1958) 159 F.Supp. 282; Ruth v. Lewis, (D.C., D.C., 1958) 166 F.Supp. 346; Szuch v. Lewis, (D.C., D.C., 1960) 193 F.Supp. 831; Harper v. Lewis, (D.C., D.C., 1960) 186 F.Supp. 285.

2. Stampolis v. Lewis, 186 Pa.Super. 285, 142 A.2d 348, cert. denied 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572; Pavlovscak v. Lewis, (D.C., W.D.Pa., 1958) 168 F.Supp. 839; 3 Cir., 274 F.2d 523, cert. denied 362 U.S. 990, 80 S.Ct. 1078, 4 L.Ed.2d 1023; Myhalyk v. Lewis, 398 Pa. 395, 158 A.2d 305, cert. denied 362 U.S. 989, 80 S.Ct. 1078, 4 L.Ed.2d 1022.

tion of the problem here confronting the Court, as no issue was raised in the cited cases with respect to the legality of the Welfare Fund provisions of the National Wage Agreement. To the extent that such cases are cited as factual proof of the existence or non-existence of a detailed plan adopted by the trustees, this appears to the Court to be a circuitous and unsatisfactory way of establishing any factual issue believed by the parties to be necessary to a decision of the defendants' motion for summary judgment. It would appear to the Court that the legal sufficiency of the Welfare Fund provisions of the National Wage Agreement must be determined under the record upon this motion from the face of the National Wage Agreement and from the affidavit of the secretary of the Board of Trustees to the effect that a detailed plan for disbursing funds was adopted by the trustees, and not from factual matters appearing only in cases cited in the parties' briefs.

Insofar as the Court can determine, the exact issue here raised has been presented and passed upon by the Courts in only two previously reported cases, Van Horn v. Lewis, (D.C., D.C., 1948) 79 F.Supp. 541, and Lewis v. Gilchrist, (D. C., N.D.Ala., 1961) 198 F.Supp. 239. It is further contended by the defendants that the case of Lewis v. Benedict Coal Co., 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed. 2d 442 (1960), is authority in support of the legality of the Welfare Fund. It is true that Justice Brennan in delivering the opinion of the Court in that case stated in the introductory sentence to his opinion:

> "The National Bituminous Coal Wage Agreement of 1950, a collective bargaining agreement between coal operators and the United Mine Workers of America, provides for a union welfare fund meeting the requirements of § 302(c) (5) of the Taft-Hartley Act."

However, the issue confronting the Court was not the legality of the welfare pro-

visions of the National Wage Agreement, but rather the right of the employer to withhold royalty payments unto the Welfare Fund upon breach of the National Wage Agreement by the Union. The language quoted above from the Benedict case appears to be a statement of a factual assumption, not a legal conclusion of a contested issue.

In both the Van Horn case and the Gilchrist case, supra, the Courts held the language of the National Wage Agreement with respect to the establishment of the Welfare Fund to be sufficient compliance with Section 302(c) (5) of the Taft-Hartley Act [29 U.S.C. 186(c) (5)]. Both of these cases, while not binding upon this Court, are persuasive authority for the contention here made by the defendant. The Van Horn case in particular is persuasive, not so much by reason of its logic as by reason of its age, it having been decided in 1948 within one year after enactment of Section 302(c) (5), and no legislative or judicial action contrary thereto has since been taken. The Gilchrist case, in reaching its conclusion, relies largely upon the Van Horn decision, but cites also the case of Lewis v. Hixson Coal Co., (D.C., W.D.Ark., 1959) 174 F.Supp. 241. The latter case is relevant, however, only insofar as it can be considered to establish the fact that the trustees did draft a detailed written plan for disbursement of the welfare trust funds. Both the Van Horn case and the Gilchrist case reach their conclusion that the National Wage Agreement complies with Section 302(c) (5) rather dogmatically and without analysis of the statutory language or reference to the legislative history of this section.

The statutory language of immediate significance to the issue here presented is the statement that "Provided, That * * * the detailed basis on which such payments are to be made is specified in a written agreement with the employer * * *." The difficulty presented is by use of the word "detailed". It is clear that the language of the Na-

tional Wage Agreement with reference to the establishment of the Welfare Fund provides *a* basis for disbursement of the Welfare Fund. When the National Wage Agreement is read in conjunction with all of the provisions of Section 302(c) which govern in some detail the establishment and the operation of the trust, it is apparent that a legally sufficient trust is established to be the subject of enforcement in the courts.[3]

It is apparent from the legislative history of Section 302(c) that the concern of Congress was to permit the establishment of welfare funds only where, among other matters, such funds were set apart in a trust legally enforcible at the instance of the employee beneficiaries. Section 302(c) (5) should not be interpreted in isolation from the other provisions of Section 302(c), but rather should be interpreted as a part of a legislative plan as a whole. When so read, it is apparent that the establishment of a legally enforcible method of arriving at a detailed basis for distributing welfare trust funds is sufficient to comply with Section 302(c) (5). The Court is of the opinion that the language used in the National Wage Agreement is sufficient to establish such a legally enforcible method of arriving at a detailed basis for distributing welfare trust funds as to be in compliance with Section 302(c) (5). For the reasons herein stated, the Court concurs with the results reached in the Van Horn and Gilchrist cases.

The plaintiff having conceded the validity of the defendants' contention with respect to alleged duress of the Union not rendering unenforcible the Welfare Fund's rights under the National Wage Agreement, and the Court having concluded that the National Wage Agreement is sufficient to comply with Section 302(c) (5), it will be unnecessary for the Court to decide the remaining contentions of the defendant with respect to the statute of limitations.

An order will accordingly enter sustaining the defendants' motion for summary judgment in each case and dismissing the case.

---

3. Lewis v. Benedict Coal Corporation, (C.C.A.6, 1958) 259 F.2d 346; Kennet v. U. M. W. of A., (D.C., D.C., 1960) 183 F.Supp. 315; Lewis v. Mill Ridge Coals, Inc., (C.C.A.6,. 1962) 298 F.2d 552.