**STOTTER DIVISION OF GRADUATE PLASTICS COMPANY, INC.,**
**Plaintiff–Appellant,**

v.

**DISTRICT 65, UNITED AUTO WORKERS, AFL–CIO,**
**Defendant–Appellee.**

**No. 480, Docket 92–7671.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 12, 1992.

Decided April 19, 1993.

Jerrold Goldberg, New York City (Epstein Becker & Green, P.C., New York City, of counsel), for plaintiff-appellant.

Nicholas Fish, New York City (Eugene G. Eisner, Eisner, Levy, Pollack & Ratner, P.C., New York City, of counsel), for defendant-appellee.

Before: NEWMAN, CARDAMONE, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Plaintiff-appellant Stotter Division of Graduate Plastics Co., Inc. ("GPC") appeals from a memorandum and order entered on May 27, 1992 in the United States District Court for the Southern District of New York, Lawrence M. McKenna, *Judge.* The memorandum and order of the district court denied GPC's motion for summary judgment vacating an arbitrator's award dated August 5, 1991 in favor of defendant-appellee District 65, United Auto Workers, AFL–CIO (the "Union"), and granted the Union's cross-motion for summary judgment confirming the award. The arbitrator's award required GPC, as successor to an employer that had entered into a collective bargaining agreement with the Union, to make contributions to a security plan and education fund maintained by the Union for the benefit, *inter alia,* of GPC's employees.

We affirm.

### Background

The facts underlying this appeal are largely undisputed; the parties entered into a stipulation of facts and introduced joint exhibits before the arbitrator.

H.J. Stotter, Inc. ("Stotter") was a manufacturer of plastic tumblers and mats at its plant located in the Bronx, New York. The Union represented all nonsupervisory production employees of Stotter. Under the terms of a collective bargaining agreement between the Union and Stotter entered into on May 18, 1988 (the "Contract"), Stotter

was obligated to make fixed contributions on behalf of its employees to the Union's Security Plan (the "Plan") and Education Fund (the "Fund"). The Contract provides that it "shall be binding upon the successors and assigns of [Stotter] to the extent permitted by law."

On November 14, 1989, the Union commenced arbitration, pursuant to the Contract and the rules of the American Arbitration Association ("AAA"), against Stotter for allegedly delinquent contributions and interest owed to the Plan and the Fund in the amounts of $56,959.02 and $2,847.95, respectively. In January 1990, Arthur Talmadge was selected by the parties to serve as arbitrator.

In the meantime, Stotter defaulted on a loan from Creditanstalt–Bankverein (the "Bank"). Foreclosure proceedings were commenced on January 5, 1990. On February 21, 1990, at a public foreclosure auction, the Bank purchased, as nominee for the then unformed corporation GPC, Stotter's assets (including use of the name Stotter), but not its stock or liabilities. GPC was incorporated on March 5, 1990 in Delaware, and subsequently obtained authority to do business in New York and filed a certificate of doing business there under its assumed name.

GPC operates at the former Stotter plant in the Bronx with Stotter's former employees. These employees are credited with vacation benefits and sick leave on the basis of their time employed by both Stotter and GPC. GPC uses at that location the equipment purchased at the public foreclosure auction, and manufactures the type of products, using the same methods of production, as did Stotter. GPC has fulfilled purchased orders from Stotter customers that were outstanding on February 21, 1990, and on occasion has accepted returns of goods sold by Stotter without conceding any legal obligation to do so. On May 29, 1990, GPC and the Union entered into an agreement by which they agreed (with certain immaterial exceptions) "to adopt, effective February 21, 1990" the provisions of the Contract.

As a result of the foreclosure and sale, prior to any arbitration hearings being held, the Union informed the Bank and GPC that it intended to enforce any arbitration award upon any successor in interest of Stotter. No demand for arbitration, however, was ever served upon GPC. GPC advised the Union and the AAA that GPC was not liable for any contractual obligations of Stotter, and neither Stotter nor GPC appeared at the initial arbitration hearing on June 5, 1990.

Following the June 5, 1990 hearing, the Union notified GPC that Talmadge had directed that GPC might submit a post-hearing statement with respect to (1) whether Stotter had failed to make the proper contributions to the Plan and Fund, and (2) whether any award should be binding on GPC. By letter dated July 18, 1990, Talmadge advised the AAA, the Union, GPC, and Stotter that "the prudent course is to initiate a fresh start for the arbitration proceeding" in order to allow "those parties to participate who may be affected by the outcome of the arbitration process."

GPC and the Bank fully participated at the subsequent arbitration hearings, and entered into a stipulation of facts that included a recital of the amounts owed to the Plan and Fund. GPC and the Bank reserved, however, their objection to the arbitrator's jurisdiction over them. At the close of the hearings, counsel for GPC and the Bank stated to the arbitrator: "You are fully within your jurisdiction to rule that you in fact have no jurisdiction over [GPC and the Bank.]" Counsel added: "We would ask that you rule that you do not have jurisdiction and then we will have no need to go to court."

In an award dated August 5, 1991, the arbitrator ruled that because GPC was a "successor employer" to Stotter, GPC had a duty to participate in the arbitration, and was jointly and severally liable with Stotter to the Union for the delinquent contributions to the Plan and the Fund, plus interest.

GPC argued in the ensuing action before the district court that: (1) the arbitrator did not have jurisdiction over GPC; (2) GPC's obligation for contributions arose prospectively only as of the date recited in its

agreement with the Union—February 21, 1990; (3) there was no evidence that GPC's "control group" knew of the delinquent contributions prior to the foreclosure sale; and (4) the contributions violated section 302(c)(5) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 186(c)(5) (1988 & Supp. II 1990), because they were not made to a properly separated and administered trust.

The district court conducted an "independent review of the facts," and determined that the arbitrator had jurisdiction to impose successor liability upon GPC, citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Applying *Wiley,* the district court concluded that there was substantial continuity of identity between Stotter and GPC, the Union did not fail to make its claims known to GPC, and the imposition of liability upon GPC was accordingly appropriate. The court also rejected GPC's assertions that it was only liable for contributions after February 21, 1990, and that there was no evidence that GPC's "control group" knew of the liability for delinquent contributions prior to the sale. The court declined to consider GPC's argument pursuant to the LMRA because it was not raised before or during the arbitration hearings, and only passingly in GPC's post-hearing brief. Accordingly, the district court confirmed the arbitrator's award.

This appeal followed.

### Discussion

■ Preliminarily, we note that our role in reviewing an arbitration award is extremely limited. *See United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36–38, 108 S.Ct. 364, 369–71, 98 L.Ed.2d 286 (1987) (collecting cases). If the arbitrator "is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id.* at 38, 108 S.Ct. at 371; *see also Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2d Cir.1978) ("When arbitrators explain their conclu-

sions ... in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result."). "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco,* 484 U.S. at 36, 108 S.Ct. at 370 (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)).

■ On the other hand, courts are entrusted with the threshold determination whether a dispute is subject to arbitration under an assertedly applicable agreement to arbitrate. *See, e.g., Litton Fin. Printing Div. v. NLRB,* —— U.S. ——, ——, 111 S.Ct. 2215, 2226, 115 L.Ed.2d 177 (1991); *AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 650–51, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986); *Wiley,* 376 U.S. at 546–47, 84 S.Ct. at 913.

On appeal, GPC argues that: (1) the arbitrator "engaged in misconduct" by asserting jurisdiction over GPC; (2) even if the arbitrator had jurisdiction, he exceeded his authority by holding GPC liable for Stotter's obligations; and (3) the payments to the Plan and the Fund required by the Contract violate the LMRA, with the result that the arbitral award directing them is "illegal[] on its face." We address each of these arguments in turn.

### A. Arbitrator's Assertion of Jurisdiction over GPC.

■■ GPC asserts that the arbitrator's decision to bind it as a "successor" to Stotter amounted to misconduct. In support of this claim, GPC maintains that because it was never made a formal party to the arbitration by being served in accordance with N.Y.Civ.Prac.L. & R. § 7503(c) (McKinney 1980) or Rule 7(a) of the AAA Labor Arbitration Rules, and having reserved its objection to participation in the proceedings, the award cannot be enforced against it. The New York statute is not controlling, because this labor arbitration is

governed by federal law. *See Wiley*, 376 U.S. at 548, 84 S.Ct. at 914. Stotter, GPC's predecessor, was properly served pursuant to the AAA rule, and the various communications to GPC regarding the arbitration satisfied the purpose of the rule, even assuming that GPC's full participation in the arbitration did not constitute a waiver of the requirement. Judgment upon such procedural aspects of the arbitration, furthermore, is a matter for the arbitrator, not this (or any other) court. *See Wiley*, 376 U.S. at 555–59, 84 S.Ct. at 917–19.

In any event, GPC asserts that it could not be made a party to the arbitration because it was not a party to a contract with the Union until May 29, 1990, and did not even exist as an entity until after February 21, 1990. This argument essentially merges with the broader question whether the arbitrator correctly determined that GPC was a "successor" to Stotter.

In *Wiley*, the Supreme Court held that the surviving corporation of a merger was obliged to arbitrate disputed issues under a collective bargaining agreement between the merged (and no longer existing) corporation and the union that represented the merged corporation's employees, even though the surviving corporation had not signed the contract and the contract did not contain an express provision binding successors.[1] *Wiley*, 376 U.S. at 544–48, 84 S.Ct. at 912–14; *see also Local 32B–32J Serv. Employees Int'l Union v. NLRB*, 982 F.2d 845, 849 (2d Cir.1993) (subsequent employer may be obligated to arbitrate under predecessor's collective bargaining agreement). The Court stressed that the duty to arbitrate does not arise in every case where there is a change of ownership or structure of a company, but only in cases where there exists a "substantial continuity of identity in the business enterprise before and after [the] change." *Wiley*, 376 U.S. at 551, 84 S.Ct. at 915. The Court also acknowledged "the possibility that a union might abandon its right to arbitration by failing to make its claims known." *Id.*

■ In the instant case, such continuity clearly exists—the same plant is being operated, the Stotter name is being used, the same products are being made with the same equipment and methods of production, all the Stotter employees were retained by GPC, and employee benefits are calculated based on service time with both Stotter and GPC. Moreover, the Union notified the Bank and GPC of its claims against Stotter, and GPC has stipulated that the Bank employees who were monitoring Stotter's loan were aware of the Union's claim prior to the sale. Indeed, although it reserved its right to object to the arbitrator's jurisdiction, GPC was an active participant in the arbitration proceedings.

Furthermore, Murray Rothstein, a vice president of Stotter who was fully aware of the Union's claim and who had participated in the selection of the arbitrator on behalf of Stotter, continued to serve as a vice president of GPC. Rothstein received and responded to the AAA's correspondence regarding the arbitration proceedings both before and after the sale to

---

**1.** The applicable New York statute rendered the surviving corporation "liable for all liabilities and obligations of each of the corporations consolidated in the same manner as if such consolidated corporation had itself incurred such liabilities or obligations." *Wiley*, 376 U.S. at 547–48 & n. 2, 84 S.Ct. at 914 & n. 2. The "successor" question was decided, however, as a matter of federal, rather than state, law. *Id.* at 548, 84 S.Ct. at 914. It has since been decided, furthermore, that "[s]o long as there are other indicia of 'substantial continuity,' the way in which a successor obtains the predecessor's assets is generally not determinative of the 'substantial continuity' question." *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 44 n. 10, 107 S.Ct. 2225, 2237 n. 10, 96 L.Ed.2d 22 (1987) (citing *Howard Johnson Co. v. Detroit Local Joint Executive Bd., Hotel & Restaurant Employees*, 417 U.S. 249, 257, 94 S.Ct. 2236, 2241, 41 L.Ed.2d 46 (1974) ("ordinarily there is no basis for distinguishing among mergers, consolidations, or purchases of assets in the analysis of successorship problems"); *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 182 n. 5, 94 S.Ct. 414, 424 n. 5, 38 L.Ed.2d 388 (1973)). Accordingly, the fact that the Bank purchased Stotter's assets as a nominee for GPC does not meaningfully distinguish this case from *Wiley*, or otherwise impact upon our analysis of the successorship issue.

GPC.[2] Additionally, the collective bargaining agreement between the Union and GPC expressly adopted the provisions of the Contract with only immaterial exceptions. Finally, because the delinquent contributions arose prior to the transfer of the business, this is not a case where the Union is "assert[ing] ... bargaining rights independent of the [Contract]." *Id.* Thus, there was a sufficient basis to find that GPC was Stotter's successor and was obliged to arbitrate the Union's claims under the Contract, and accordingly, that the arbitrator had jurisdiction to resolve the dispute.

■ GPC argues that even if it had a duty to arbitrate, it was denied "its fundamental right to participate in the choice of an arbitrator." Although GPC objected to the arbitrator's jurisdiction, no claim is made that GPC specifically objected to arbitrator Talmadge deciding the dispute.

The Contract provides that disputes may be submitted to arbitration "pursuant to the Rules of the [AAA]." AAA Labor Arbitration Rule 34 specifies: "Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection thereto in writing shall be deemed to have waived the right to object." Accordingly, GPC has waived any objection to the selection of Talmadge. *See York Research Corp. v. Landgarten,* 927 F.2d 119, 121–22 (2d Cir.1991) (failure to make timely objection waives challenge to selected arbitrators).

*B. The Merits of the Arbitrator's Decision.*

■ GPC also contends that Talmadge exceeded his authority by holding GPC liable for Stotter's liabilities. GPC asserts that it only obligated itself to the Union as of February 21, 1990, a date subsequent to the accrual of the contribution obligations at issue, and thus cannot be held responsible for these obligations. As we have not-

ed, clear Supreme Court authority requires that we accord extraordinary deference to the arbitrator's determination. *See, e.g., Misco,* 484 U.S. at 36–38, 108 S.Ct. at 370–71 (collecting cases). Further, GPC's argument ignores the facts that the Contract bound Stotter's successors and assigns, and that GPC entered into an agreement with the Union which adopted (with immaterial exceptions) the provisions of the Contract.

In sum, we find an adequate basis for the arbitrator's decision to hold GPC liable for the delinquent contributions. *See, e.g., Upholsterers' Int'l Union Pension Fund v. Artistic Furniture,* 920 F.2d 1323, 1327 (7th Cir.1990) (successor may be found liable for predecessor's delinquent pension contributions when it has notice of liability and there is sufficient continuity of business operations); *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.,* 823 F.2d 289, 294–95 (9th Cir.1987) (successor employer liable for delinquent contributions to employee benefit trust funds in absence of bargaining to "impasse" with incumbent union); *EEOC v. Local 638,* 700 F.Supp. 739, 743–46 (S.D.N.Y.1988) (in view of substantial continuity and notice of liability, union local treated as successor for purposes of antidiscrimination injunction); *see also Central States, Southeast and Southwest Areas Pension Fund v. Hayes,* 789 F.Supp. 1430, 1435–36 (N.D.Ill.1992) ("The successor liability doctrine is an exception to the general common law rule that ' "a corporation that merely purchases for cash the assets of another corporation does not assume the seller corporation's liabilities." ' " (quoting *Artistic Furniture,* 920 F.2d at 1325 (quoting *Travis v. Harris Corp.,* 565 F.2d 443, 446 (7th Cir.1977)))). In view of these precedents, the substantial continuity of Stotter's operations under GPC, and GPC's explicit adoption of the Contract (effective February 21, 1990), which spelled out that it would bind Stotter's successors and assigns to the extent permitted by law, the

**2.** We reject, as did the district court, GPC's contention that the Union was under some obligation to identify GPC's "control group" and establish that group's knowledge of Stotter's liabilities to the Plan and the Fund.

arbitrator did not exceed his broad authority by imposing liability for the contribution delinquencies.

### C. Alleged Violation of the LMRA.

Finally, GPC argues that the award impermissibly directs monies to be paid into a fund which does not mandate that the amounts due for pension benefits be segregated from all other monies, in violation of § 186(c)(5). The district court declined to decide this issue because it was raised for the first time in a footnote in GPC's post-hearing arbitration brief. The court was certainly justified in so ruling. Moreover, even on the assumption that GPC did not waive its claim, its argument does not succeed on the merits.

Section 186(c)(5) provides an exception to the ban on employer payments to labor organizations or representatives when the payment is made

> to a trust fund established ... for the sole and exclusive benefit of the employees of such employer ...: *Provided,* That (A) such payments are held in trust for the purpose of paying, ... for the benefit of employees, ... for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness ..., or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance ...; and (C) such payments as are intended to be used for the purpose of providing pensions or annuities for employees are made to a separate trust which provides that the funds held therein cannot be used for any purpose other than paying such pensions or annuities....

*Id.* The Contract provides that payments are to be made to the Plan, and that "[t]he allocation of the ... contribution to the ... [Plan] shall be determined by the Trustees of [the Plan]."

There is no claim by GPC that the required trust fund was not established, or that any temporary commingling of monies in the Plan's trust fund did not serve a legitimate purpose. Accordingly, we do not accept GPC's belated contention that

because the Plan trustees are only authorized, not mandated, to comply with the law, the Plan violates the law and relieves GPC from making its required contributions. *Cf. Board of Trustees, Container Mechanics Welfare/Pension Fund v. Universal Enters., Inc.,* 751 F.2d 1177, 1184–85 (11th Cir.1985) (employer compelled to make contributions even though funds commingled in escrow account in technical violation of § 186(c)(5)(C)); *National Stabilization Agreement of the Sheet Metal Indus. Trust Fund v. Commercial Roofing & Sheet Metal,* 655 F.2d 1218, 1224–25 (D.C.Cir.1981) (payments required to be made to trust fund despite structural flaw in violation of equal representation requirement of § 186(c)(5)(B)), *cert. denied,* 455 U.S. 909, 102 S.Ct. 1256, 71 L.Ed.2d 447 (1982); *Quad City Builders Ass'n v. Tri City Bricklayers Union No. 7,* 431 F.2d 999, 1004 (8th Cir.1970) (despite § 186(c)(5)(B) structural flaw, contributions may continue to be received).

GPC's reliance upon *Bricklayers, Masons & Plasterers Int'l Union, Local Union No. 15 v. Stuart Plastering Co.,* 512 F.2d 1017 (5th Cir.1975), is misplaced. That case held only that there was no obligation to make employer contributions *"in anticipation* of the creation of a trust fund that ... may never be created in fact." *Id.* at 1028; *see also National Stabilization,* 655 F.2d at 1225 n. 10 (distinguishing *Bricklayers* on this basis). Further, because GPC paid monies into the Plan following its adoption of the Contract without seeking to cure the alleged defect pursuant to 29 U.S.C. § 186(e) (1988), it may not now present this asserted deficiency as a defense to making the required contributions. *See National Stabilization,* 655 F.2d at 1227 & n. 17.

### Conclusion

The judgment of the district court confirming the arbitrator's award against GPC is affirmed.