**Robert L. CHARTIER, etc., Petitioner,**

**v.**

**3205 GRAND CONCOURSE CORP., et al., Respondents.**

**No. 98 Civ 3305 LAK.**

United States District Court, S.D. New York.

June 7, 2000.

Christopher Smith, for petitioner.

Jeffrey S. Dubin, Huntington, NY, for respondents Marlin Management LLC and Martin Shapiro.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is a petition to confirm an arbitration award directing the reinstatement of a

building superintendent on the ground that he was not properly terminated. Respondents' principal defense is that they were not parties to the collective bargaining agreement ("CBA") and therefore were not obliged to arbitrate the dispute. They also asserted counterclaims against the petitioner.

## I

This Court previously (1) modified the arbitration award to identify the respondent as Marlin Management of NY, LLC ("Marlin"), (2) confirmed the award, as modified, to the extent it was rendered against Marlin, (3) otherwise denied the motion to confirm, and (4) dismissed the counterclaims in an opinion, familiarity with which is assumed.[1] The basis for confirmation of the award was the Court's conclusion that the issue whether Marlin was bound by the CBA had been determined adversely to it in a Bronx County Civil Court landlord-tenant proceeding (in which Marlin sought possession of the superintendent's apartment) and that the Civil Court's finding had preclusive effect here.

Subsequent to the entry of the Court's decision, Marlin sought reargument on the ground that the Civil Court had entered a later order providing that there would be no collateral estoppel or *res judicata* effect. This application was unsupported by any affidavit. Based on an affidavit by petitioner's counsel, Denise A. Forte. Esq., which inaccurately represented that the subsequent Civil Court order had been entered in a new proceeding, this Court declined to alter its decision.

Marlin then appealed. Based largely on "[t]he parties' explanations at oral argu-

ment," the Court of Appeals vacated so much of this Court's order as confirmed the award against Marlin and remanded for the purpose of determining whether the second Civil Court order was entered in the original or a new proceeding, whether in either case it is entitled to collateral estoppel effect and, if not, whether the award should be confirmed on other grounds. It affirmed in all other respects.[2]

## II

This Court has had the benefit of additional submissions by the parties following remand. It now is clear that the second Civil Court order was entered in the original summary proceeding and reflected the parties' agreement that the initial order would have no preclusive effect. Former adjudication is an affirmative defense which may be waived. The Court finds that petitioner waived any such defense and therefore declines to give preclusive effect to the initial order, even assuming that the order otherwise would be preclusive. The case therefore comes down to whether the arbitration award should be confirmed on the merits.

## III

As this Court previously found, the CBA in question was entered into by the former owner of Marlin's building, 3205 Concourse Realty, Inc. ("3205 Concourse Realty"),[3] and Service Employees International Union, Local 32E, AFL—CIO (the "Union"). Marlin, an entirely unrelated entity, bought the building pursuant to a contract of sale dated May 9, 1997.[4] The contract, although not the deed, provided that the property was sold subject to the employment of the building superintendent, a Un-

---

**1.** *Chartier v. 3205 Grand Concourse Corp.*, 27 F.Supp.2d 472 (S.D.N.Y.1998).

**2.** *Chartier v. Marlin Mgmt., LLC*, 202 F.3d 89 (2d Cir.2000).

**3.** The Petition in this action lists 3205 Grand Concourse Corp., rather than 3205 Concourse Realty, Inc., as a respondent, as does the

Notice of Intent to Arbitrate. All of the supporting documents, however, including the contract for sale and deed, refer only to 3205 Concourse Realty, Inc. The Court assumes that they are the same entity.

**4.** Forte Aff., Jun. 29, 1998, Ex. 1.

ion member.[5] The arbitration at issue was commenced by the Union in consequence of Marlin's allegedly improper discharge of the superintendent. Marlin, which consistently took the position that it was not bound by the CBA, did not participate in the proceedings.

■ Arbitration is a creature of contract. In ordinary circumstances, no one is obliged to participate in it absent his or her agreement to do so.[6] In the labor context, however, broader considerations apply.[7]

The Union here concedes that Marlin never signed the CBA. Indeed, Marlin steadfastly refused to discuss the matter with the Union. The Union nevertheless claims that Marlin agreed to be bound and, in any case, that it succeeded to 3205 Concourse Realty's obligations as a matter of law on a theory of successor liability.

*Express or Implied Assumption*

■ Petitioner relies first on the clause in the contract of sale in which Marlin agreed to purchase the building subject to the superintendent's employment. It argues that this was tantamount to an assumption of the CBA because the buyer purchased subject to the superintendent's employment, one aspect of which was the fact that the employment was governed by the CBA. But that is not an inescapable conclusion. Surely if the buyer intended to assume the seller's obligations under the CBA, there were more direct ways of

expressing that object. Moreover, the clause might be read to mean only that the buyer recognized that the sale of the building was subject to the right of the superintendent to occupy his apartment rent free as long as his employment continued. Hence, the most that can be said for the contract of sale is that it is ambiguous—it arguably is susceptible of either construction.[8] In these circumstances, extrinsic evidence is admissible to resolve the ambiguity, and the practical construction placed upon the contract by the parties is powerful evidence of their intentions.[9]

The only evidence that supports the view that Marlin regarded the contract of sale as binding it to the CBA is the fact it made benefit plan contributions in respect of the building superintendent for the month of August 1997,[10] an event it credibly explains as a mistake and which in any case never was repeated.[11] On the other hand, Marlin repeatedly rebuffed the Union's efforts to discuss with it the possible assumption of the CBA.[12] The Court, therefore, finds that Marlin's actions convincingly demonstrated its belief that it was not bound by the contract of sale to assume 3205 Concourse Realty's obligations under the CBA.[13] In consequence, if the issue were governed by state law, the Court readily would hold that Marlin did not assume the obligations of the CBA. The issue, however, is not so readily disposed of.

5. *Id.* ¶ 33.

6. *See, e.g., Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 478, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989).

7. *See, e.g., John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

8. *See Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525, 527 (2d Cir.1990).

9. *See, e.g., Fireman's Fund Insurance Cos. v. Siemens Energy & Automation, Inc.,* 948 F.Supp. 1227, 1233–34 & n. 15 (S.D.N.Y. 1996) (citing cases).

10. Forte Aff. ¶ 9.

11. Shapiro Aff., Oct. 7, 1998, ¶¶ 16–17.

12. *Id.* ¶¶ 11–13.

13. There is no evidence as to whether 3205 Concourse Realty regarded Marlin as so obliged. Nor is there any evidence that the Union knew of the clause in the contract of sale, so its efforts to persuade Marlin to assume the CBA, which otherwise would tell strongly against it, are not significant in resolving the issue before the Court.

The question whether one has assumed the obligations of a CBA is governed by federal rather than state law.[14] Nevertheless, rules of the law of contracts may be adapted by federal courts to the collective bargaining process,[15] and state law principles may inform this determination.[16] The Court finds nothing in this record or in the federal policies regarding collective bargaining that suggests that Marlin should be regarded as voluntarily having assumed the obligations of the CBA notwithstanding the absence of any express assumption and the clear manifestation of its determination not to do so.

The Union argues also that Marlin is bound by the CBA because Article XXXIV of that agreement provides that the agreement is binding upon the parties' "assigns." But this argument is entirely without merit. For one thing, 3205 Concourse Realty never assigned the agreement. For another, the Supreme Court in *Howard Johnson Co. v. Detroit Local Joint Executive Board*[17] squarely held that the existence in a CBA of a clause purporting to bind the employer's successors and assigns cannot itself bind the purchaser of the employer's assets absent assumption of the CBA by the purchaser.[18]

*Successor Liability*

█ Although Marlin did not assume the obligations of the CBA, the Supreme Court has made it clear that one who succeeds to the business of an employer that was a party to a CBA, in appropriate circumstances, may be held to have succeeded also to its obligation to arbitrate under a CBA irrespective of any intention to do so.[19] This conclusion flows from the view that "[i]t would derogate from 'the federal policy of settling labor disputes by arbitration,' [citation omitted], if a change in the corporate structure or ownership of a business enterprise had the automatic consequence of removing a duty to arbitrate previously established...."[20] Nevertheless, a putative successor is bound by an arbitration clause in a CBA assented to by its predecessor only if there is "a substantial continuity of identity in the business enterprise before and after [the] change" and, perhaps, if the union has not abandoned its position as to successorship by failing to make its claims known.[21] This determination requires a fact intensive inquiry concerning whether the successor uses the same plant, makes the same products, uses the same name, employs the same workers, utilizes the same methods, and carries over the same benefit plans.[22] Moreover, a finding of substantial continuity, at least in a sale of assets case, ordinarily requires proof of "a substantial continuity in the identity of the work force across the change in ownership," perhaps even employment by the purchaser of a majority of the employees of the seller.[23]

14. *See, e.g., John Wiley & Sons,* 376 U.S. 543, 548, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *NLRB v. Babad,* 785 F.2d 46, 49–50 (2d Cir. 1986).

15. *See, e.g., Babad,* 785 F.2d at 49–50.

16. *See, e.g., John Wiley & Sons,* 376 U.S. at 548, 84 S.Ct. 909.

17. 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974).

18. *Id.* at 258 n. 3, 94 S.Ct. 2236.

19. *See generally Howard Johnson Co.,* 417 U.S. at 257–60, 263–64, 94 S.Ct. 2236; *NLRB v. Burns Int'l Secur. Servs., Inc.,* 406 U.S. 272, 285–90, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972); *John Wiley & Sons,* 376 U.S. at 548–51, 84 S.Ct. 909.

20. *John Wiley & Sons,* 376 U.S. at 549, 84 S.Ct. 909 (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

21. *Id.* at 551, 84 S.Ct. 909.

22. *See, e.g., Stotter Division of Graduate Plastics Co. v. District 65, United Auto Workers, AFL—CIO,* 991 F.2d 997, 1001 (2d Cir.1993).

23. *See Howard Johnson Co.,* 417 U.S. at 263, 94 S.Ct. 2236; *see also Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 184 n. 6, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973).

■ Some of the facts pertinent in this case are plain. Marlin now owns and operates the building at 3205 Grand Concourse formerly owned and operated by 3205 Concourse Realty.[24] Immediately after the sale, Marlin employed the same building superintendent, the only employee on the premises, as was employed by 3205 Concourse Realty just before the sale.[25] There is no relationship between the two companies, the building having passed from one to the other by a conventional real estate transaction.[26]

Other facts reasonably may be inferred. As the seller was named 3205 Concourse Realty, the address of the building at issue, it is more likely than not that the building was its sole property. Moreover, it seems quite unlikely that the management of the building—i.e., determination of such matters as fixing of rents, selection of tenants, and major repair and capital investment decisions—was committed to a resident superintendent. Rather, the Court infers that such matters were determined by the owner or by off-premises management employed by the owner and that the identity of management changed with the transfer of the building.

Other arguably pertinent facts are matters of pure speculation. The record does not disclose whether the building superintendent was 3205 Concourse Realty's only employee, as opposed to the only resident employee. It is similarly silent as to whether he is Marlin's only employee. Moreover, it is common for owners of rental properties in New York to hold numbers of individual buildings in separate corporations or partnerships, but to operate them as single enterprises with substantial numbers of employees who are paid by whichever entity seems convenient for tax and other purposes. Yet the record does not disclose whether 3205 Concourse Realty or Marlin is part of such an operation. For all of these reasons, it is impossible to know whether Martin's purchase of the building subject to the employment of the superintendent involved a transfer of 3205 Concourse Realty's entire work force or, instead, of only one of a larger number of employees.

These considerations point in different directions. Certainly there is no evidence that there was any change in the building superintendent's employment setting. As far as this record discloses, his role remained exactly the same. On the other hand, there plainly was no continuation of ownership or management. The Court has no evidence that all or even a majority of 3205 Concourse Realty's work force was employed by Marlin. Given the structure of the transaction, a sale of assets, it cannot fairly be said that Marlin is bound by the arbitration clause of 3205 Concourse Realty's CBA with the Union without doing violence to Marlin's reasonable expectations. Indeed, the same fairly may be said for the Union. As the Supreme Court suggested in *John Wiley & Sons*, the Union's position concerning its rights has a bearing here.[27] And the Union initially took the position that Marlin was not bound by the CBA. Instead, it sought to negotiate the assumption or renewal of the agreement by Marlin and in fact sought to induce Marlin to sign an assumption agreement.[28] It first asserted that Marlin was bound only upon instituting the arbitration.[29]

In all the circumstances, the Court finds that Marlin is not bound by the CBA as successor to 3205 Concourse Realty. The Court is not persuaded that there is substantial continuity in the business enterprise following its acquisition of the premises.

24. Forte Aff.Ex. 1.

25. *Id.;* Shapiro Aff. ¶ 10.

26. *Id.* ¶ 4.

27. 376 U.S. at 551.

28. Shapiro Aff. ¶¶ 11–12 & Exs. C, D.

29. *See id.* Ex. G.

### Conclusion

For the foregoing reasons, the petition to confirm the arbitration award, as modified, against Marlin Management of NY, LLC is denied. The Clerk will close the case.

The foregoing supplements the findings of fact and conclusions of law in the Court's previous decision.

SO ORDERED.